IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, | No. C 07-05596 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| | **MOTIONS FOR SUMMARY JUDGMENT** |
| v. | **AND DENYING DEFENDANTS'** |
| | **MOTIONS FOR SANCTIONS** |
| CITY OF SAN MATEO, et al. | |
| Defendants. | |

On February 4, 2011, the Court heard argument on two motions for summary judgment filed by the defendants remaining in this case. The first motion is brought by the City of San Mateo, the San Mateo Police Department, Shandon Murphy, and Joseph Yansuka ("City defendants"). Doc. 393. The second is brought by the County of San Mateo, the San Mateo County Sheriff's Office, and Suzanne Blick ("County defendants"). Doc. 395. Also pending before the Court are three motions for sanctions filed by the City and County defendants in August and September of last year. Docs. 351, 363, 364. Having considered the arguments of counsel and plaintiff in pro se, and the papers submitted, the Court hereby GRANTS both motions for summary judgment and DENIES all three motions for sanctions.

**BACKGROUND**

**Factual background**

This case arises from an incident in San Mateo on the evening of November 4, 2005. Pro se plaintiff Jane Doe alleges that on that night she was sexually assaulted by James Mason, a one-time boyfriend and member of the San Jose police force. Plaintiff ran into Mason at Hola's Mexican Restaurant in Burlingame. Burns Decl. Ex. 1 at TR 28:25–29:3; 38:22–38:25. Plaintiff and Mason had

dated "periodically in the year before," and they had sex when they were dating. *Id.* at TR 45:19–46:7. That night, plaintiff and Mason left separately. Plaintiff was intoxicated and took a taxi to Mason's house. *Id.* at TR 36:7, 38:4–38:10.

The parties agree that plaintiff and Mason had sex, and that sometime afterward Mason called the police in order to have plaintiff removed from his house. Defendants and City of San Mateo police officers Murphy and Yansuka came to Mason's house along with Sergeant Pierucci. Murphy Decl. Ex. 1 (police report). Defendant Murphy arrested plaintiff for "being drunk in public." *Id.* The officers brought plaintiff to the San Mateo County jail where she was booked by defendant Suzanne Blick, a San Mateo County sheriff's deputy, and detained from about 2 a.m. to about 7 a.m. Blick Decl. ¶¶ 2–3 & Ex. A.

The parties disagree over many details of what happened that night. Plaintiff says that Mason sexually assaulted her. Pl. Oppo. at ¶ 1. Defendants argue that this is not true, and that in any event plaintiff is estopped from arguing that it is because she dismissed with prejudice a civil sexual assault complaint that she had brought against Mason in state court. Plaintiff says that she told defendants Murphy, Yansuka, and Blick that she had been raped and asked to be taken to the hospital. *Id.* at ¶¶ 9, 12, 22. Defendants Murphy, Yansuka, and Blick say this is not true. They say that plaintiff spoke explicitly about having sex, was upset that Mason asked her to leave and that she was being arrested, and accused defendants of being "in this together" with Mason, a fellow police office. But she did not say that the sex was non-consensual and she did not request or appear to need medical assistance. *See, e.g.,* Murphy Decl. Ex. 1. Plaintiff says that defendant Blick strip searched her. Pl. Oppo. at ¶ 17. Defendant Blick says this is not true. *See generally* Blick Decl. Plaintiff says that she suffered injury to her mental heath because of how defendants treated her that night. Burns Decl. Ex. I, TR 331:12–14. Defendants argue that she did not, or at least she has not presented sufficient evidence to prove that she did.

**Procedural background**

Plaintiff filed this case on November 2, 2007. Doc. 1 (Complaint). In the operative complaint, she brought dozens of claims against dozens of defendants. Doc. 158 (Second Amended Complaint).

2

Following the Court's March 19, 2009 order on defendants' motions to dismiss, five claims remain in this case against five defendants. Doc. 215 (granting in part and denying in part defendants' motion to dismiss).

Plaintiff's first claim is against defendants Murphy, Yansuka, and Blick for failure to provide medical assistance in violation of the Fourteenth Amendment. Plaintiff alleges that she told defendants Murphy, Yansuka, and Blick that she had just been raped and needed to be taken to the hospital, but that they refused to provide her with medical assistance. Plaintiff argues that defendants did not believe that she had been raped, which injured her mental health.

The second claim is against defendant deputy Blick for an unreasonable search in violation of the Fourth and Fourteenth Amendments. Plaintiff argues that she was strip searched, and that the strip search was unreasonable since she was brought to the jail on a public intoxication charge.

The third, fourth, and fifth, are claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. They are brought against all defendants and are based on the same basic sequence of events.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).[1] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving

---

[1] These motions were filed after the revision of Rule 56 went into effect. The standard for granting summary judgment has not changed. As the Committee notes on the recent amendment state:
> Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Citation are to the new rules unless otherwise noted. The Court does not discuss the new rules in more detail, however, as the changes are not relevant to this case.

3

party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

## DISCUSSION

### I. The motions for summary judgment

#### A. Objections

Defendants object to plaintiff's opposition brief, as well as to every piece of evidence introduced by plaintiff.

Plaintiff's opposition brief is over one hundred pages and appears in large part to be cut and pasted from her complaint. However, the argument section of her brief extends only from page 48 to page 56, and her statement of disputed facts is a single page. The Court will accept plaintiff's brief.

Additionally, out of an abundance of caution, the Court will consider the exhibits attached to plaintiff's brief, and the Court will assume that plaintiff's expert would be able to testify.

A large portion of the body of plaintiff's opposition brief is a statement of facts. It is not clear

whether plaintiff wishes for this statement of facts to be considered as an affidavit, or whether she merely uses it to provide background about the case for the Court and defendants. Assuming that it is an affidavit (or the functional equivalent), City defendants object to large portions of the statements. To the extent that the statements contain legal conclusions, hearsay, or make broad statements that are not otherwise supported by facts, the Court does not consider plaintiff's statement of facts to be evidence that could defeat defendants' motions for summary judgment. However, City defendants also object to portions in which plaintiff states that she was raped, arguing that the Court has already decided that she was not raped. City defendants are wrong and their objections on this ground are overruled.

### B.   Failure to provide medical assistance

Defendants Murphy, Yansuka, and Blick move for summary judgment on plaintiff's constitutional claim for failure to provide medical assistance.

Questions regarding conditions and circumstances of confinement of pre-trial detainees are properly addressed under the due process clause of the Fourteenth Amendment. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). "With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation omitted). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Serious medical needs include . . . mental health needs." *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("[T]he requirements for mental health care are the same as those for physical health care needs.").

As the Ninth Circuit recently explained in *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010),

> To set forth a constitutional claim under the Eighth Amendment predicated upon the failure to provide medical treatment, [f]irst, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. The second prong requires both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Deliberate indifference

5

thus requires an objective risk of harm and a subjective awareness of that harm. *Id.* at 1095–96 (internal citations and quotation marks omitted) (alteration in original).[2]

Failure to provide medical treatment to a rape victim who is in custody, including failure to provide needed psychiatric care, if done with deliberate indifference, can be a constitutional violation. *See Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir. 2010) (upholding denial of summary judgment to defendant on deliberate indifference claim for failure to provide needed psychological care to rape victim). The question is whether there is sufficient competent evidence on the record, viewed in the light most favorable to plaintiff, to support such a claim in this case.

Here, plaintiff's theory is as follows. She was raped. She told the police who arrested her (including defendants Murphy and Yansuka) that she was raped. She told the police who supervised her in the jail (including defendant Blick) that she had been raped. A rape victim necessarily has a serious medical need, as failure to treat the medical needs of a rape victim in a timely manner can result in severe physical and mental health problems. Defendants Murphy, Yansuka, and Blick should have brought her to the hospital. They did not. Their failure to bring plaintiff to the hospital resulted in mental health injury, as plaintiff suffered from defendants' apparent disbelief that she had actually been raped.

Defendants Murphy and Yansuka argue that plaintiff's injury theory requires that she prove that she actually was raped by Mr. Mason, and that she is "estopped from asserting that . . . Mr. Mason sexually assaulted her." Mot. at 10. On the estoppel point, defendants Murphy and Yansuka are incorrect. Plaintiff only is estopped from asking the Court to hold *Mason* liable for sexually assaulting

---

[2] There is conflicting Ninth Circuit law regarding whether or not the plaintiff needs to show that she suffered substantial harm. In *Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990), the court held that a deliberate indifference claim based on a theory of improper delay in treatment requires a showing that "the delay . . . caused substantial harm." *Id.* at 1335. In *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006), in contrast, the court stated that a prisoner bringing a more general deliberate indifference claim "need not show his harm was substantial." *Id.* at 1096; *see also id.* ("[H]owever, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs.").

6

her.[3] As the Court has already explained,

> Plaintiff is . . . precluded from relitigating the issue of whether Mason is liable for sexual assault. She is not, however, barred from asserting that on November 4, 2005, she sought medical assistance *as a result of being sexually assaulted*. . . . The success of plaintiff's constitutional claim does not hinge on whether Mason is liable for sexual assault.

Doc. 215 at 16 (emphasis added). Plaintiff is not estopped from arguing that the harm caused in this case was emotional upset stemming from having the police ignore the fact that she had been raped, even though that argument requires her to prove that she was actually raped.

Next, defendants Murphy and Yansuka argue that because plaintiff "refused to allow discovery into her pre-incident and post-incident treatment history, she should not be allowed to offer any proof that the City of San Mateo's conduct is the cause of her emotional distress." City Mot. at 11. Defendants Murphy and Yansuka are correct that plaintiff refused to answer some questions posed to her during her deposition about whether she sought mental health treatment or received any kind of medication to treat her emotional injuries. *See* Pl. Depo. at TR 260:8–260:19, 261:9–261:25. She did testify that she took anxiety and sleeping pills for three years, but she then refused to provide the identity of the doctors who prescribed the medication or the identity of any therapist she saw. Pl. Depo. at TR 268:8–269:6. The question for the Court is whether her refusal to answer certain questions about her mental health during her deposition means that she is unable to rely on *any* of her statements regarding her mental health to defeat the City defendants' motion for summary judgment.

No defendant in this case has filed a single motion to compel. No defendant has requested the Court's intervention to have plaintiff submit to a psychiatric exam, respond to interrogatories, or otherwise answer questions regarding her claim of mental health injury. Moreover, when the Court ordered plaintiff's much-delayed deposition to occur on October 28 and 29, 2010, the Court provided space in the courthouse for the deposition, and stated explicitly that "[i]f there is any problem with proceeding, the parties are ordered to contact the Court immediately." Doc. 375. No defendant contacted the Court during the deposition. It is one thing to argue that a plaintiff has put her mental

---

[3] Plaintiff filed a separate civil law suit in San Mateo County Superior Court in 2006 against Mason, in which she brought claims for sexual battery, and intentional and negligent infliction of emotional distress. The state court dismissed the claims with prejudice on September 12, 2008, and this Court held previously that plaintiff is collaterally estopped from asserting the claims against Mason. *See* Doc. 120.

health at issue, and request that the Court intervene in a discovery dispute on that basis. It is another thing entirely to skip that step and argue that the plaintiff is precluded from presenting otherwise competent evidence once discovery has ended.[4]

Defendants Murphy and Yansuka also argue that plaintiff's testimony that they made her situation worse is insufficient to prove causation. They argue that "in a personal injury action, causation must be proven, within a reasonable medical probability based upon competent expert testimony." City Reply at 6. They also argue that, without the testimony of an expert,[5] plaintiff will be unable to show that she was harmed by defendants' allegedly wrongful conduct—not getting her immediate treatment—rather than something else, such as being raped, being arrested, or not seeking care on her own immediately upon being released from custody.[6]

---

[4] Compare the facts of *Lyons v. Johnson*, 415 F.2d 540 (9th Cir. 1969), the case that defendants Murphy and Yansuka rely on when they ask the Court to ignore competent evidence that is on the record. In that case, the plaintiff had refused to submit herself to any discovery whatsoever in relation to her claims; and when she finally appeared at her deposition, she refused to answer any question except to state her name. *After* these refusals, the defendants filed motions for orders requiring the plaintiff to answer questions or granting dismissal of her suits. The trial court "accorded a full and patient hearing in the matter," explained the plaintiff her rights, and informed her of the consequences of continuing to refuse to answer questions—that "it would be necessary for him to dismiss the suits." On that record, the Ninth Circuit held that the district court had not abused its discretion dismissing her claims.

[5] There is a disagreement between the parties over plaintiff's apparent plan to call a woman who testified in her state court case as an expert in this case. The woman is Marcia Blackstock, who plaintiff says has been the Director for the Bay Area Woman Against Rape for 26 years. Plaintiff explains that she intends to call Ms. Blackstock "to assist the trier of fact in understanding issues that they may not have a deep understanding about. Those areas include Rape Trauma, the effects of alcohol and rape, and the various behaviors of the victim after she has been raped." Opp. at 52. Plaintiff attaches to her opposition brief portions of the state court's discussion of Ms. Blackstock's possible testimony. Opp. Ex. F.
Defendants argue that she should not be permitted to testify at trial, and plaintiff should not be able to rely on her testimony for the purposes of defeating their motion for summary judgment, because plaintiff did not disclose her as an expert or provide defendants with an expert report.
Without deciding whether or not Ms. Blackstock would be permitted to testify, the Court does find that Ms. Blackstock's testimony would not relate to the actual element of causation of injury. Rather, from the state court discussion of Ms. Blackstock, it appears that she would testify regarding how a rape victim might "try to reach back into their memory; piece together information; come out with different stories, inconsistent stories." Opp. Ex. F. at 11:4–11:6. This would be relevant to the question of whether in fact plaintiff was raped; it would not be relevant to the question of causation of injury.

[6] Defendants also argue that plaintiff must prove that defendants caused her to suffer a *severe* injury. As discussed above, there is Ninth Circuit case law that directly supports that proposition, as well as Ninth Circuit case law that directly contradicts it. *Compare Wood*, 900 F.2d at 1335 (plaintiff must prove causation of substantial harm) *with Jett*, 439 F.3d at 1096 (plaintiff need not prove causation

8

The Eighth Circuit has a line of cases in which it has held that expert testimony is required to prove causation in certain more complex deliberate indifference cases. In *Alberson v. Norris*, 458 F.3d 762 (8th Cir. 2006), a prisoner died after being treated by doctors who failed to diagnose him with Goodpasture Syndrome, "a rare autoimmune disease that is difficult to diagnose." *Id.* at 764–65. The court held that "[w]here the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation." *Id.* at 765–66. The holding was the same in *Gibson v. Weber*, 433 F.3d 642 (8th Cir. 2006), where an inmate with diabetes, which can cause foot injuries to be more serious than they would be in a person without diabetes, challenged a treatment plan and treatment actually provided for burns to his feet. *Id.* at 646. And the holding was the same in *Robinson v. Hager*, 292 F.3d 560 (8th Cir. 2002), where an inmate argued that the "plaintiff's lapse in hypertension medication" caused him to have a stroke. *Id.* at 564. The Eighth Circuit contrasted these cases with those where "'a visible injury or a sudden onset of an injury occurs,'" in which case a "'causal connection between an event and an injury may be inferred.'" *Id.* (quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000)).

All of these cases involved not merely a plaintiff with a sophisticated medical condition. They also involved defendants who provided the plaintiff with some (though arguably inadequate) treatment. Neither of those facts exists in this case.[7] Moreover, the Seventh Circuit has specifically warned district courts not to demand expert testimony in deliberate indifference cases, except "in the rare instance." *See Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). In *Gayton*, the Seventh Circuit not only held that the district court had erred excluding certain expert testimony in a deliberate indifference case, but it also went on to say that the district court should not have been so quick to assume that expert testimony was required to prove causation:

---

of substantial harm). Because the Court resolves this motion on a different ground, it need not resolve this question.

[7] Defendants Murphy and Yansuka cite a California state court case in support of their argument that expert testimony is required. In that case, the plaintiff alleged that he had been born with brain damage due to the defendants' malpractice in providing prenatal care and testing. *See Espinosa v. Little Co. of Mary Hosp.*, 31 Cal. App. 4th 1304 (1995). That case too involves a sophisticated medical condition. It is an instance where the plaintiff simply could not know the cause of his injury. It is not controlling.

9

> Because [expert] testimony concerning the possible connection between Taylor's vomiting and her tachycardia should not have been excluded, the plaintiff now has expert evidence to establish causation. Moreover, even if the plaintiff [the administrator of Taylor's estate] could not proffer expert testimony in this case, he still would have adequate causation evidence to reach trial against Nurse Hibbert. Proximate cause is a question to be decided by a jury, and only in the rare instance that a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury should summary judgment be granted on the issue of causation. Expert testimony is not always necessary to establish causation in a case where an inmate alleged that prison employees violated his due process rights by failing to provide him with adequate medical care . . . . The plaintiff has offered evidence that Taylor had a serious medical condition, the guards thought her condition serious enough that she needed medical attention, and Nurse Hibbert actively ignored her requests for treatment. This is enough for a jury to find that Taylor incurred "many more hours of needless suffering for no reason" as a result of Nurse Hibbert's inaction.

*Id.* at 624–25 (citation omitted).

Defendants could have approached the Court to request a motion to compel a mental health examination if they believed that they needed expert testimony in order to rebut plaintiff's testimony regarding causation. *See Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995) (explaining when a plaintiff puts her mental condition in controversy such that a court may order the plaintiff to submit to a mental examination). However, a plaintiff who puts her mental condition in controversy is not necessarily required to present expert testimony in order to prove her case. In this case, plaintiff is not required to have an expert testify as to causation.

Defendant Blick also advances several arguments. She argues that there is a significant question as to whether plaintiff was actually raped, which undermines plaintiff's argument that she had a serious medical need. She cites evidence of what she calls "behavior [that] is less consistent with someone who has been sexually assaulted, and more consistent with someone who has engaged in a voluntary sexual encounter, only regretted it much later." *Id.* at 6. Although defendant Blick clearly doubts plaintiff's allegation that she was raped, there is still a genuine question of whether she was raped. Defendant Blick is not entitled to summary judgment because she believes that plaintiff's behavior is "less consistent with someone who has been sexually assaulted."

Defendant Blick also argues that she "was not 'indifferent' to plaintiff, much less deliberately so"; she could not have been, since plaintiff never indicated that she needed medical attention. *Id.* Defendant Blick states that she has no "independent recollection of plaintiff." *Id.* ¶ 1. However, she cites the arrest and booking sheet to argue that plaintiff denied having any medical complaints when she

10

arrived at the jail. Blick Decl. Ex. A. Defendant Blick "would have reported her complaint" of rape if plaintiff had made one. Blick Decl. ¶ 9. She says that there is no evidence that any person other than plaintiff heard plaintiff make a complaint or request medical assistance. She challenges plaintiff's own assertions that she had requested medical attention (in particular, that plaintiff asked to be taken to the hospital to be "swabbed," Levy Decl. Ex. B, TR 208:2–208:12, 332:8–332:10) by arguing that "plaintiff's own credibility is suspect at best" because she was intoxicated, slipping in and out of consciousness, and continues to allege new facts in a case that is five years old.

At her deposition, plaintiff testified that, at the jail "I used the word assaulted. Looking back I probably – you know, I felt like I didn't know what else to tell them for them to listen to me. It seemed like, you know, I told them to take me to the hospital to get swabbed. I said I was raped. And every – they just laughed at everything that I said." *Id.* TR 332:2–332:11. This is sufficient evidence to support a conclusion that plaintiff did in fact tell defendant Blick that she believed that she was in need of medical attention. The Court is not permitted to make credibility determinations on a motion for summary judgment. Nor is the Court permitted to discount the deposition testimony of a plaintiff simply because the defendant believes that it is not true or that it is inconsistent with the defendant's belief as to how defendant would have acted.

Nonetheless, the Court finds that all defendants are entitled to summary judgment on this claim. Although the Court accepts, for the purpose of these motions, that plaintiff was raped, plaintiff still has not presented evidence that she had a serious medical need as defined in the case law—that is, a physical or mental condition that, if left untreated overnight, could have resulted in further significant injury or the unnecessary and wanton infliction of pain.[8] Plaintiff does not argue that she had a serious physical health need that required immediate treatment, and there is no evidence of such a need on the record.[9]

---

[8] Plaintiff's allegation that she had been raped and needed medical assistance, and that she told the arresting police and jail staff that she had been raped and needed medical assistance, was sufficient to survive a motion to dismiss. It was fair to infer from her complaint was that she had a serious medical need that she had communicated to defendants. However, given the evidence that plaintiff and defendants have presented, the Court is no longer able to make that inference.

[9] For example, she does not argue that she needed immediate medical care to prevent an unwanted pregnancy, or to prevent her from contracting an STD. She does not argue that she needed immediate medical treatment to prevent a wound from becoming infected. Plaintiff testified at her

11

Plaintiff does not argue that defendants should have provided her with mental health care, and she has not presented evidence of a serious mental health need—that is, a mental health condition that, if left untreated overnight, could have resulted in further significant injury or the unnecessary and wanton infliction of pain.[10] Rather, plaintiff argues that, by failing to provide her with treatment for the physical trauma that she suffered when she was raped, defendants implicitly communicated to plaintiff that they did not believe that she had been raped, and defendants therefore added to the mental trauma that plaintiff suffered.[11]

That is to say, plaintiff argues that, although she did not have a serious physical medical need or a serious mental health need that required immediate treatment, defendants should nonetheless have treated her physical medical needs, and that they should be held liable for the fact that their failure to do so caused her mental trauma. To allow plaintiff to proceed to trial on this theory, and given the evidence that she has presented, the Court not only would have to recognize a constitutional requirement for police officers to believe a rape victim when she says she has been raped, but a constitutional requirement that the police officers communicate this belief by providing physical health care, regardless whether or not the rape victim requires physical health care. While believing and treating a woman who states that she is a rape victim is the right thing to do, it is not something required by the constitution unless, objectively speaking, she has a "serious medical need," as defined by case law. Defendants motions for summary judgment on this claim are GRANTED.

---

deposition that she has no recollection of bleeding or having any broken bones. Burns Decl. Ex. I at TR 79:9–80:11. Plaintiff suffered from some pain from intercourse, including from having her hair pulled and body grabbed during sex; pain from an incident at a bar that took place earlier that night; general soreness; numbness; and flulike symptoms. *Id.* at TR 53:11–53:20; 54:2–54:9; 55:24–56:1; 56:10–56:17. She distinguishes these latter symptoms from symptoms of a hangover. *Id.* at TR 53:21–53:24. However, there is no indication that, if left untreated overnight, these injuries could have resulted in further significant injury or the unnecessary and wanton infliction of pain.

[10] This is not a case, for example, where a prisoner has been raped and, due to his incarceration, is unable to seek mental health treatment on his own. *See Nelson*, 603 F.3d at 448–49.

[11] Plaintiff testified at her deposition that "they didn't believe me, which caused me emotional distress, obviously, where I had to block it out because I felt very hopeless." Burns Decl. Ex. I, TR 331:12–14. In her papers opposing summary judgment, plaintiff explains that she testified "that she was in therapy for three years and was prescribed medication as a results of the incidents." Oppo. at 54 (citing to pages 202–359 of her deposition, but not including the transcript as an exhibit).

12

### C. Unreasonable search

Defendant Blick also moves for summary judgment on plaintiff's unreasonable search claim, which is brought against defendant Blick only.

"Searches of pretrial detainees in jail must be reasonable within the meaning of the Fourth Amendment." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1445 (9th Cir. 1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 558 (1979)).[12]

Plaintiff alleges that defendant Blick violated the Fourth and Fourteenth Amendments by performing a strip search on plaintiff when she was brought to the county jail on a public intoxication charge. Plaintiff alleges that she was brought to the San Mateo County jail after being arrested for public intoxication and that sheriff's deputy Suzanne Blick and other deputies "removed and arranged some of the [p]laintiff's clothing so as to permit a visual inspection of her underclothing, breasts, and buttocks, and conducted an unlawful strip search upon the plaintiff . . . ." SAC ¶ 56.

Defendant Blick argues that is entitled to summary judgment on this claim. In support of her contention, defendant Blick cites to her own declaration. Defendant Blick does not remember plaintiff. Blick Decl. ¶ 1. However, based on plaintiff's booking sheet, defendant Blick knows that plaintiff "would have remained in her own clothes, pat-searched for weapons and contraband by female jail staff, and probably provided jail footwear." *Id.* ¶ 4. "She would not have had her clothing removed (unless necessary for her own safety), and that would have been done by female custody staff." *Id.* Defendant Blick is "confident" that she did not remove plaintiff's bra and panties, because "[n]o such documentation appears in her file." *Id.* (Defendant Blick states that plaintiff testified at plaintiff's deposition that defendant Blick removed plaintiff's bra and panties, and cites to page 291, although no party has submitted to the Court page 291 of the deposition transcript.)

Plaintiff attempts to rebut defendant's assertions by pointing to the "Jail property slip" that she attaches as Exhibit 9, in which defendant Blick identifies the color of plaintiff's bra and panties.

In her reply, defendant Blick does not address this piece of evidence, but rather argues simply

---

[12] This standard is not changed by *Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc), which distinguishes itself from "[c]ases that address searches of arrestees at the place of arrest, [and] searches at the stationhouse prior to booking or placement in a holding cell." *Id.* at 971.

13

that "plaintiff offers neither legal authority nor evidence of a constitutionally violative search. She has failed to raise a triable issue of material fact on this claim." County Reply at 3 (footnote omitted).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, defendant Blick has done so, by submitting her declaration. The burden then passed to plaintiff. Plaintiff's evidence that defendant Blick knew the color of her bra and panties is consistent with defendant Blick's statement that plaintiff "would not have had her clothing removed (unless necessary for her own safety), and that would have been done by female custody staff." Additionally, assuming that plaintiff in fact testified at her deposition that defendant Blick removed plaintiff's bra and panties, this too is consistent with defendant Blick's declaration. Nor has plaintiff brought the Court's attention to any evidence that would call into question defendant Blick's assertion that plaintiff's clothing would only have been removed for plaintiff's safety, or that it would only have been removed by female staff.[13]

On the record before the Court, the Court is satisfied that defendant Blick is entitled to summary judgment. Although there is a question as to whether or not plaintiff's clothing was removed, that fact is not material given defendant Blick's unrebutted assertion that plaintiff's clothing only would have been removed for plaintiff's safety, and that it would only have been removed by female staff. Such a search would be reasonable. Defendant Blick's motion for summary judgment on plaintiff's Fourth Amendment claim is GRANTED.

**D.    Negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress**

The County of San Mateo, the San Mateo County Sheriff's Office, the City of San Mateo, the San Mateo Police Department, and defendants Murphy, Yansuka, and Blick all move for summary judgment on plaintiff's claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

---

[13] This is so even reading plaintiff's statement of facts in her opposition brief as an affidavit.

14

### 1.     Negligent infliction of emotional distress & negligence

The basic elements of a claim for negligent infliction of emotional distress are: (1) that the defendant was negligent, (2) the plaintiff suffered serious emotional distress, (3) the defendant's negligence was a substantial factor in causing the plaintiff's serious emotional distress. *See Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). The basic elements of a negligence action are: (1) the defendant had a legal duty to conform to a standard of conduct to protect the plaintiff, (2) the defendant failed to meet this standard of conduct, (3) the defendant's failure was the proximate or legal cause of the resulting injury, and (4) the plaintiff was damaged. *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).

City defendants argue that plaintiff cannot prove that she suffered serious, severe, or extreme emotional distress, because she has refused to present any evidence other than her own testimony that she was distressed about what happened. City defendants argue that without such evidence, and given the fact that plaintiff has admitted to making misrepresentations about her case in the past, there is no "guarantee of genuineness in the circumstances of the case," as required under California law. *See Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 810 (Cal. 1993). Similarly, the County defendants argue that plaintiff would need expert testimony to prove that she sustained emotional distress as a proximate result of defendant Blick's actions.

The phrase that City defendants quote from *Potter* was made in a case where the California Supreme Court held that plaintiffs in a negligence action may recover damages for fear of developing cancer. The California Supreme Court determined, however, that it was important for the plaintiffs to prove that, medically speaking, there was a high risk that they would get cancer. The plaintiffs were unable to do so without an expert. The *Potter* holding is not directly relevant to this case. Here, plaintiff is not alleging that she feared that something might happen, and therefore she does not have to prove that there was a likelihood that the thing would actually happen. Rather, she argues that she suffered greatly when she was disbelieved, and she sought psychological treatment for that suffering. In truth, defendants are asking the Court to make a credibility determination about plaintiff's testimony. The Court is not permitted to do that on a motion for summary judgment.

Nonetheless, the Court finds that all defendants are entitled to summary judgment on these

claims. Both of these claims require plaintiff to show that defendants had a legal duty to conform to a standard of conduct and that they failed to meet this standard of conduct. As discussed above, in order for plaintiff's claims to succeed, therefore, the Court would need to recognize first a requirement that police officers believe a rape victim when she says she has been raped, and second a requirement that the police officers communicate this belief by providing physical health care, regardless whether or not the rape victim requires physical health care. The Court is not aware of such a duty under California law.[14]

Plaintiff argues that defendants can be held liable for negligence because they "were in violation of California Penal [C]ode [§] 264.2 which specifies the minimum standards for treatment for victims of sexual assault." Penal Code § 264.2 states:

> (a) Whenever there is an alleged violation or violations of subdivision (e) of Section 243, or Section 261, 261.5, 262, 273.5, 286, 288a, or 289, the law enforcement officer assigned to the case shall immediately provide the victim of the crime with the "Victims of Domestic Violence" card, as specified in subparagraph (G) of paragraph (9) of subdivision (c) of Section 13701.
>
> (b) (1) The law enforcement officer, or his or her agency, shall immediately notify the local rape victim counseling center, whenever a victim of an alleged violation of Section 261, 261.5, 262, 286, 288a, or 289 is transported to a hospital for any medical evidentiary or physical examination. The victim shall have the right to have a sexual assault counselor, as defined in Section 1035.2 of the Evidence Code, and a support person of the victim's choosing present at any medical evidentiary or physical examination.
>
> (2) Prior to the commencement of any initial medical evidentiary or physical examination arising out of a sexual assault, a victim shall be notified orally or in writing by the medical provider that the victim has the right to have present a sexual assault counselor and at least one other support person of the victim's choosing.
>
> (3) The hospital may verify with the law enforcement officer, or his or her agency, whether the local rape victim counseling center has been notified, upon the approval of the victim.
>
> (4) A support person may be excluded from a medical evidentiary or physical examination if the law enforcement officer or medical provider determines that the presence of that individual would be detrimental to the purpose of the examination.

Under California's negligence per se doctrine, as codified in Evidence Code § 669, there is a

---

[14] At the hearing, defendants stated that California Government Code § 846 makes individual peace officers immune from any claim that is based on a decision not to investigate, and they suggested that Section 846 may be applicable in this case. The proper place for defendants to have made an immunity argument was in their motion to the Court, so that plaintiff would have had an opportunity to respond. The Court will not decide the motion on the basis of this argument.

16

presumption of negligence where four elements are established:

> (1) [the defendant] violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

The only action that is required of a police officer when he hears of an alleged rape is that the officer "provide the victim of the crime with the 'Victims of Domestic Violence' card." Plaintiff does not argue that she has been injured by a failure to provide her with such a card. Penal Code § 264.2 goes on to require that, *if* a rape victim is transported to a hospital for any medical evidentiary or physical examination, *then* a law enforcement officer has certain duties. Here, plaintiff was not transported to a hospital, and thus these requirements were not triggered. The negligence per se doctrine does not apply, and plaintiff cannot rely on Penal Code § 264.2 as creating a standard of care that would have required defendants to bring her to the hospital.

Because plaintiff has not presented facts that would show that defendants had a legal duty to conform to a standard of conduct and that defendants failed to meet this standard of conduct, defendants' motions for summary judgment on these claims are GRANTED.[15]

### 2. Intentional infliction of emotional distress

The elements of a prima facie case of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Cervantez v. J. C. Penney Co.*, 24 Cal. 3d 579, 593 (Cal. 1979) (citations omitted). "For [c]onduct to be outrageous [it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citations omitted).

---

[15] If plaintiff's claims against defendant Blick are also raised based on the defendant Blick's search of plaintiff, defendant Blick is still entitled to summary judgment. As explained above, the facts on the record show that if defendant Blick removed any of plaintiff's clothing, it was reasonable for her to do so.

17

1    Plaintiff does not address this claim in her brief opposing summary judgment. It appears from
2  her complaint that plaintiff brings this claim on the basis of the same sequence of events as the other
3  claims. Doc. 158 at 11–12. The Court has already concluded that the evidence shows that defendants
4  actions were not negligent. Nor were defendants' actions "extreme and outrageous." Defendants'
5  motions for summary judgement on this claim are GRANTED.

## II.     Sanctions

Three motions for sanctions remain pending in this case. Two are based on plaintiff's failure to appear at her deposition on May 14, 2010. Doc. 351 (City defendants); Doc. 364 (County defendants). The parties scheduled the deposition at a case management conference on April 16, 2010. Defendants argue that the Court ordered plaintiff to appear and that she failed to do so. Plaintiff says she was sick, and that she called the attorneys the day before to say she would not be there. Defendants say that they received no call, that they certainly did not confirm that the deposition was cancelled, and that plaintiff has exhibited a pattern of discovery abuse. Defendants also argue that when they raised the possibility that they would seek sanctions, plaintiff responded by saying she would dismiss defendants from the case, but that she later backed away from that promise. Plaintiff says she never offered to settle or dismiss defendants. City defendants request dismissal or $6,970.50, which they say will compensate them for deposition costs, attorney's fees for the research and preparation of the motion for sanctions, and attorney's fees for hours spent pursuing settlement with plaintiff instead of seeking sanctions immediately upon her failure to appear.[16] County defendants request dismissal or $683, which they say will compensate them for deposition costs.[17]

The third motion is based on the Court's denial of plaintiff's motion to compel an answer to an interrogatory. Doc. 363 (City defendants). City defendants say that plaintiff failed to meet and confer,

---

[16] The breakdown of the request, according to City defendants is as follows. For deposition costs: court reporter, $195; videographer, $397.50; parking, $18; attorney travel and wait time at $200 per hour, $700. For other attorney's fees: for research and preparation of this motion for sanctions at $200 per hour,$2,400; for hours spent pursuing settlement instead of seeking sanctions, $3,260.

[17] The breakdown of the request, according to County defendants, is $18 for parking and $665 for attorney travel and wait time at $190 per hour.

18

that the City was forced to put together a declaration to explain to the Court what it would have explained to the plaintiff at a meet and confer, and that this declaration formed the basis of the Court's holding on the motion. City defendants request $940, which constitutes the attorney's fees for the time the attorney spent putting together the declaration. In response, Ms. Doe requests $940 for an alleged violation of the discovery order in Doc. 347.

Rule 37 of the federal rules of civil procedure provides that sanctions "must" be ordered in these circumstances, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5) (the Court "must" award sanctions to the winning party after a denial of a motion to compel, unless the motion was "substantially justified" or circumstances make sanctions "unjust"); Fed. R. Civ. P. 37(d)(3) (discussing sanctions for a party's failure to appear at her own deposition).

The parties disagree as to whether the plaintiff actually failed to appear, or whether she attempted to postpone the deposition. *Cf. Estrada v. Rowland*, 69 F.3d 405 (9th Cir. 1995) (construing failure to appear provision strictly). Plaintiff did eventually appear at a deposition. Ultimately, defendants were able to file dispositive motions that, in fact, have disposed of the case in its entirety before trial. Most importantly, plaintiff is unrepresented. Although pro se plaintiffs must comply with the federal rules, as well as court rules, and their failure to do so can prejudice defendants, in this case the Court finds that an award of sanctions would be unjust.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions for summary judgment. (Docs. 393, 395.) The Court DENIES defendants' motions for sanctions. (Docs. 351, 363, 364.)

**IT IS SO ORDERED.**

Dated: February 9, 2011

SUSAN ILLSTON
United States District Judge